UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERIKA LINETTE GARCIA MEDINA,
        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

**DECISION & ORDER**
17-cv-6793-JWF

*FILED MAR 15 2019 — UNITED STATES DISTRICT COURT, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY*

## Preliminary Statement

Plaintiff Erika Linette Garcia Medina ("plaintiff" or "Garcia") brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for benefits. See Compl. (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket # 10, 15. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

In 2008, plaintiff's first application for social security benefits was denied. Administrative Record, Docket # 8 ("AR") at 152-53. On February 25, 2014, plaintiff protectively filed another application for Supplemental Security Income under Title II of the

1

Social Security Act ("the Act"), alleging an onset date of April 1, 2007. AR at 138. Her second application was initially denied.

On March 15, 2016, plaintiff, represented by counsel, appeared at a hearing before Administrative Law Judge Julia D. Gibbs ("the ALJ"). AR at 32-69. Plaintiff and a vocational expert testified at the hearing. According to plaintiff's counsel, plaintiff was duped by a tax professional, which resulted in plaintiff's income in 2014 exceeding the "substantial gainful activity" limit. AR at 37. Accordingly, plaintiff asked the ALJ to amend the onset date to January 1, 2015. AR at 37. On June 30, 2016, the ALJ issued an unfavorable decision. AR at 15-27.

Plaintiff appealed the ALJ's decision to the Appeals Council ("the AC") and the AC denied plaintiff's appeal on September 18, 2017. AR at 1-5. Garcia commenced this action on November 16, 2017. Docket # 1. She filed for judgment on the pleadings on June 11, 2018 (Docket # 10), and the Commissioner filed her motion for judgment on the pleadings on September 6, 2018 (Docket # 15). Plaintiff replied on September 27, 2018 (Docket # 16).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is

substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert. denied, 551 U.S. 1132 (2007).

## Discussion

Plaintiff advances a number of arguments, all directed at the ALJ's treatment of the various medical opinion evidence in the record. She contends that the ALJ erred in giving "limited weight" to plaintiff's treating physician and her treating nurse practitioner ("NP"), and in failing entirely to address several opinions from acceptable and non-acceptable sources from before and after her onset date. In the end, the ALJ did not assign controlling weight to any medical opinion, acceptable or otherwise. The Court addresses each of these arguments and concludes that remand is warranted.

<u>Rejection of All Opinions Considered:</u> Although an ALJ is free choose between properly submitted medical opinions, she may not substitute her own lay opinion for those of medical experts. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians [sic] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the

3

weight assigned to a treating physician's opinion."). The residual functional capacity ("RFC") here was not tethered to any particular medical opinion evidence. Indeed, the ALJ gave "limited weight" to all three of the opinions she addressed. Because the ALJ here did not give controlling or substantial weight to <u>any</u> opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further.

For her part, the Commissioner cites to a recent case from this district in which Judge Scott addressed a similar situation and held that the ALJ's RFC there was not formed out of "whole cloth," but rather was an amalgamation – but not a perfect mirror-image – of the different opinions to which he gave little weight. See <u>Dougherty-Noteboom v. Berryhill</u>, No. 17-cv-243, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018). Judge Scott so concluded because the ALJ considered all of the evidence available in the record and the RFC was demonstrably supported by the medical evidence in the record as a whole. <u>Id.</u>

But the ALJ's decision here does not clearly reflect what pieces of the opinion evidence the ALJ chose to incorporate into the RFC or why those pieces were chosen. Nor, as described below, is it apparent that the RFC formulated here is supported by the medical evidence in the record because that evidence is consistent with the opinion evidence the ALJ disregarded and failed to incorporate into the RFC.

4

Moreover, unlike the ALJ in Dougherty-Noteboom, the ALJ here failed to consider *all* of the opinion evidence in the record. Indeed, there are at least eleven medical opinions rendered in this case. Some of them are more helpful than others, some are from non-acceptable sources, and some were written prior to plaintiff's amended onset date. Nevertheless, the ALJ referenced and evaluated only *three* of them in her opinion. Critically, the ALJ addressed only one opinion rendered after Garcia's alleged onset date, even though there were three such opinions in the record. See AR at 432-35 (opinion of treating NP Luis Berrios on March 30, 2015, which the ALJ did not address); AR at 436-39 (opinion of treating physician Scott Hartman, MD, which did not provide functional limitations, but which the ALJ nonetheless failed to address or reference). Confusingly, while ignoring opinion evidence from the relevant time period, the ALJ *did* address and weigh two other opinions from *before* the onset date – one from treating NP Berrios and another from consultative evaluator Harbinder Toor, MD – but used their apparent untimeliness as a reason to discredit them. Without explanation, the ALJ also failed entirely to mention two additional opinions from plaintiff's treating NP (AR at 397-400, 420-23) and one from plaintiff's treating physician, Dr. Hartman (AR at 428-31).

While the ALJ may have had sound arguments to discredit some of these opinions – either because they were from non-acceptable

5

medical sources, were not particularly helpful, or came before the alleged onset date – they were relevant at the very least and she should have at least addressed them. See Mura v. Colvin, No. 16-cv-6159, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017) ("Although the timing of a treating physician's report is plainly relevant to the ALJ's determination of the weight, if any, to give it, a treating physician's opinion need not be rejected solely because it predates the relevant time period."); Drozdowski, v. Colvin, No. 15-cv-292, 2016 WL 5402698, at *8 (W.D.N.Y. Sept. 28, 2016) (remanding to consider treating source opinions rendered prior to onset date because "not every medical opinion provided before an alleged onset date is necessarily irrelevant"); Saxon v. Astrue, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011) ("While the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources', the ALJ has a duty to address and discuss the opinion. Here, the ALJ erred when he failed to mention [a non-acceptable medical] opinion."). The ALJ was particularly obligated to address the opinion of Dr. Hartman on September 24, 2015 (AR at 436-39), despite that it may not have been particularly helpful because it did not address Garcia's functional limitations.

ALJ's Treatment of Dr. Hartman's March 30, 2016 Opinion: The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's

6

treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to medical opinions from your treating sources."). Where, as here, an ALJ gives a treating physician opinion something less than "controlling weight," she must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); Halloran, 362 F.3d at 33 (per curiam) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of

7

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ <u>must comprehensively set forth his reasons</u> for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations and alterations omitted).

The ALJ gave "limited weight" to Dr. Hartman's March 30, 2016 treating opinion, in which he opined that plaintiff would only be able to walk, stand, sit, push, pull, bend, see, hear, speak, and lift and carry for 1-2 hours each in an eight hour workday. AR at 989. He also found abnormalities with plaintiff's gait, walking, ability to squat, abdomen, extremities, hands, and musculoskeletal and neurological systems. AR at 989. The ALJ discounted this opinion, explaining that the assessment consisted largely of "checked-off responses" and was not accompanied by a "detailed medical explanation" or treating notes. AR at 23-24. The ALJ also contended that "the claimant appeared permanently disabled based on her chronic <u>medications</u>."[1] AR at 24 (emphasis added).

---

[1] This is a misreading of Dr. Hartman's report. In response to the field "Individual appears permanently disabled, condition is not expected to improve and is unable to participate in any activities," Dr. Hartman responded that such a finding was "[d]ue to chronic <u>medical conditions</u> on next page." AR at 987 (emphasis added). The ALJ misconstrued this finding to mean that Garcia's

8

None of these reasons are sufficiently "good" to discredit the opinion of a treating physician who had evaluated plaintiff multiple times over the course of a several-year relationship.

First, while it is true that the report utilizes several check-boxes, it also includes some fields in which Dr. Hartman provided written narrative of the reasons for plaintiff's disability, an overview of her medications, hospitalizations, and conditions, as well as a summary of her physical examination. But even if the form required fewer narrative fields, "[t]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." Trevizo v. Berryhill, No. 15-16277, 2017 WL 4053751, at *8, n.4 (9th Cir. Sept. 14, 2017). Although not necessary here, this Court could take judicial notice of the fact that when a relevant opinion or assessment "box" is checked by a medical professional and the checked finding supports the ALJ's determination, the Commissioner has no hesitancy in relying on that "checked" finding in arguing to the Court that the claimant is not disabled. The key to the usefulness of a checked box form is determining whether the opinion expressed is relevant

---

disability was due to her medication. The opinion says nothing of the sort. Rather, Dr. Hartman's finding supports the conclusion that plaintiff was in fact disabled. The ALJ does not explain how this finding – or her mistaken conclusion – lead to a finding that plaintiff was not disabled.

to a determination of disability and then assessing what data the provider would have in deciding what box to "check." Too many times treating physicians refuse or neglect to respond to requests (from both the plaintiff and the Commissioner) for reports and opinions needed to fairly evaluate disability determinations.

The fact that Dr. Hartman took time out from a busy internal medicine practice and filled out a four-page form requiring answers to dozens of questions specifically intended to assist the ALJ in making a disability determination should be appreciated, not dismissed as being weak evidence. In the context of a busy treating physician who has seen a claimant multiple times and who maintains office notes and test results to support the opinions expressed, the use of a checked box format is hardly surprising and certainly not disqualifying. If the ALJ felt the form lacked sufficient narrative, he could have contacted Dr. Hartman and requested additional information. But trying to justify the rejection of Dr. Hartman's otherwise relevant opinion based on the form on which they were rendered was error.

Second, even though Dr. Hartman's opinion itself did not include detailed examination notes, the record as a whole did. In fact, the record is replete with notes from Dr. Hartman and from other sources that seem to corroborate the limitations Dr. Hartman provided in his assessment. For example, Dr. Hartman's notes from February 3, 2015 address plaintiff "having loss of sensation &

10

numbness." AR at 559. Dr. Hartman's records from his May 22 and July 2, 2015 visits confirm Garcia's diagnosis of asthma, morbid obesity, knee osteoarthritis, chronic lower back and neck pain, and localized osteoarthritis in the right leg. AR at 578, 586-89. On September 24, 2015, Dr. Hartman indicated "[t]he wrist pain in conjunction with the injury and location of tenderness and loss of sensation could indicate ulnar nerve compression . . . . Alternatively, she may have fractured the hook of the hamate bone." AR at 597. Less than two months later, Dr. Hartman noted that plaintiff had "moderate degenerative disc change at the C6-7 level with more mild degenerative changes involving the remainder of the cervical spine" and confirmed her prescription for a cane. AR at 611. The same limitations and diagnoses were address at a February 2, 2016 visit. AR at 641.

Dr. Hartman's opinion also closely resembles opinions from other sources to which the ALJ gave little weight or failed entirely to consider. For example, consultative evaluator Dr. Toor opined that plaintiff would have "moderate to severe limitations with standing, walking" and "moderate limitations with sitting a long time" and was using a walker.[2] AR at 329. NP Berrios assigned similar restrictions to plaintiff's ability to

---

[2] The ALJ gave little weight to Dr. Toor's opinion because she indicated that it was inconsistent with the medical evidence. Based on the evidence discussed herein, I disagree with the ALJ on this point as well, but because I remand for all of the reasons stated herein, I will not elaborate on the ALJ's treatment of Dr. Toor's consultative opinion.

walk, stand, push, pull, and lift. AR at 427. That these consistent records were not appended to Dr. Hartman's opinion is irrelevant because the March 30, 2016 opinion was entirely consistent with extensive treatment notes in the record.

The ALJ's Treatment of NP Berrios's June 4, 2014 Opinion: The ALJ rejected Garcia's treating NP's opinion – like Dr. Hartman's opinion - that Garcia would be limited to walking, standing, pushing, pulling, bending, and lifting to 1-2 hours per eight hour day. AR at 24; see AR at 427. The ALJ explained that she gave the opinion "little weight" because the opinion was rendered before the onset date, it included an expected duration of only six months, was in the form of check boxes, and because a nurse practitioner is not an acceptable medical source. AR at 24. It was error for the ALJ to give such little weight to the opinion of plaintiff's primary medical provider for these contrived reasons.

Although they may be sufficient in some cases, the ALJ's first three reasons for discounting NP Berrios's opinion are not appropriate reasons here. First, while the ALJ is correct that the opinion predates the relevant disability onset date, "[s]uch reports can . . . prove to be relevant to a claimant's later condition provided that there is indication that the symptoms experienced extended in duration into the relevant time period." Baggett v. Astrue, No. 5:11-CV-0195 NAM/DEP, 2012 WL 2814369, at

12

*8 (N.D.N.Y. June 13, 2012), report and recommendation adopted, No. 5:11-CV-0195, 2012 WL 2814329 (N.D.N.Y. July 10, 2012); see Mura, 2017 WL 2543939, at *5 ("Although the timing of a treating physician's report is plainly relevant to the ALJ's determination of the weight, if any, to give it, a treating physician's opinion need not be rejected solely because it predates the relevant time period."). Second, the ALJ's insistence that the six month time period noted in the opinion establishes that plaintiff's disability was not expected to last more than twelve months, as required, is misplaced. Fountain v. Berryhill, No. 17-CV-6172, 2018 WL 4658203, at *3 (W.D.N.Y. Sept. 27, 2018) (addressing the same issue). The question on the form asks providers to list an expected duration of the claimant's inability to participate in activities outside rehabilitation. AR at 425. It does not actually say that plaintiff is expected to be disabled for six months. Even if it did, opinions from other providers issued several months to over a year later still indicated that plaintiff was expected to be unable to participate in activities for an additional six months, making her total period of inability to participate over one year. And third, as addressed above, just because an opinion comes in the form of check boxes does not render an unreliable.

Finally, the ALJ is correct that NP Berrios is a nurse practitioner, not a medical doctor, and he is thus not an

13

"acceptable medical source" as defined in 20 C.F.R. § 404.1513(a). However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,'" such as nurse practitioners, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from these medical sources, although "not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on <u>key issues such as impairment severity and functional effects</u>, along with the other relevant evidence in the file." Id. (emphasis added). Indeed, SSR 06-03p provides that an opinion from a "non-medical source" who, like NP Berrios, has seen the claimant in a "professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source," such as when "the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." Id. at *6.

Here, NP Berrios has seen plaintiff for treatment at least dating back to 2010 (AR at 397), and thus has unique knowledge of plaintiff's functioning regardless of his credentialing.

14

Plaintiff does not argue that NP Berrios's opinion deserves <u>greater</u> weight than that of her treating physician. Indeed, the opinion of plaintiff's treating physician, Dr. Hartman – which is consistent with NP Berrios's opinion – also received "little weight." Rather, plaintiff argues – and I agree – that it is error to disregard a non-acceptable source's opinion simply because[3] it comes from a non-acceptable source when that source has a lengthy treating relationship with the patient and the opinion is consistent with virtually all of the other medical opinions – including those from a treating physician - in the record.

## Conclusion

For the foregoing reasons, the plaintiff's motion (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 15, 2019
Rochester, New York

---

[3] Or, like here, where the ALJ's other bases for discrediting the opinion have been found to not be sufficiently "good."